BEALES, J., with whom KELSEY and HALEY, JJ.,
join, dissenting.
Although I agree with the majority that Code § 18.2-94 does not solely criminalize possession of just “burglarious” tools, implements, and outfits, I would find here, given appellant’s preparation of her purse before she entered the store so that it better assisted her with her plan to commit larceny by inconspicuously stealing merchandise, that the trial court did not err in convicting her under Code § 18.2-94. Therefore, I must dissent from the majority opinion.
*417 Code § 18.2-94 criminalizes the possession of “any tools, implements or outfit, with intent to commit burglary, robbery or larceny” (emphasis added), as a Class 5 felony. The legislature’s use of the term “or” twice in this statute is important, both linguistically and conceptually, because the placement of “or” in these lists creates two sets of disjunctive variables, thus creating nine combinations of words: burglary tools, larcenous outfits, robbery implements, and so on. Thus, the statute by its plain language prohibits the possession of nine categories of items, if the perpetrator possesses any of them with the requisite criminal intent. The one thing the statute clearly does not do—as its title misleadingly suggests[6] —is criminalize only possession of just burglary tools, that is, tools (not implements or outfits) possessed with the intention to use them in the commission of burglary (not robbery or larceny). See Moss v. Commonwealth, 29 Va.App. 1, 3-4, 509 S.E.2d 510, 511 (1999) (noting, “The gravamen of the offense arises from the possessor’s ‘intent to use’ these ‘common, ordinary' objects [tools, implements, or outfits] for a criminal purpose specified by statute, burglary, robbery or larceny”). Therefore, I agree with the majority opinion that a trial court can convict a defendant under Code § 18.2-94 for possessing a larcenous outfit, even where the evidence did not prove that the outfit was also burglarious.
However, after reviewing the facts in this case and the relevant law, I must respectfully disagree with the majority opinion’s conclusion that possession of this purse was not criminal behavior as defined by Code § 18.2-94. In the case currently before us, appellant chose a particular purse, emp *418 tied it, and carried it into the store with the admitted intention to use the purse to hide items that she was stealing from the store. Thus, the issue in this case is whether a purse, purposefully emptied of everything that it would ordinarily contain so that it can be used for shoplifting, can be considered a larcenous “outfit.” As opposed to the majority opinion’s definition of “outfit,” I define “outfit” by reference to the plain meaning of the term and our previous precedent, and, therefore, I would find the trial court did not err in finding appellant violated Code § 18.2-94 when she prepared and carried the purse into the store with the intention to use the purse as an aid to her plan to steal from the store. Therefore, I must dissent.
When “a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature’s intent from the plain meaning of the language used.” See Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). I would hold that, looking at the plain meaning of the word, an “outfit” includes, among other things, “wearing apparel with accessories designed to be worn on a special occasion or in a particular situation or setting.” Webster’s Third International Dictionary 1601 (1981) (emphasis added); see American Heritage Dictionary 797 (2d ed. 1991); Mercer v. Commonwealth, 29 Va.App. 380, 384, 512 S.E.2d 173, 175 (1999). Therefore, the trial court did not err in convicting appellant under Code 18.2-94.
When I consider the archetypal burglar’s outfit, I imagine a black jumpsuit with multiple pockets for stowing tools, perhaps topped off by a black ski mask and a sack for carrying away the loot. Appellant, however, was a shoplifter, not a burglar. She had no reason to put on a conventional burglar’s outfit, which would have defeated her purpose by, contrary to her intention, actually drawing attention to her presence in the store rather than, as she hoped by carrying the purse, allowing her to blend into the crowd. Appellant wanted everyone to think that she was just another shopper out spending her paycheck. Rather than hiding in the shadows, appellant, as a shoplifter, needed an inconspicuous container in which to *419 conceal stolen merchandise that also allowed her to blend in with the crowd. For appellant, as a female shoplifter, perhaps the most obvious and best option for an outfit that would assist in her larcenous intent was a large purse that she emptied before entering the store. Therefore, looking at the evidence in the light most favorable to the Commonwealth, as we must when a defendant appeals her conviction, I would find the trial court did not err in convicting appellant of violating Code § 18.2-94. See Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004).
The majority opinion, instead of deferring to the ordinary meaning of outfit, proposes to define outfit as “the tools or instruments comprised in any special equipment; as a carpenter’s or a surgeon’s outfit.” This definition ignores the plain meaning of “outfit” and instead defines the term such that it has no meaning apart from “tool” or “implement.” This new definition of the term runs counter to the “elementary rule of statutory construction that every word in the statute must be given its full effect if that can be done consistent with the manifest purpose of the act.” Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm’n, 181 Va. 811, 819, 27 S.E.2d 159, 162 (1943). Under the analysis used in the majority opinion—despite the majority opinion’s assertion in footnote 4—clothing apparently is not actually included in the list of prohibited items under Code § 18.2-94, perhaps even if it is altered to conceal the theft, as occurred in Mercer[7] Thus, a purse or pocketbook specifically carried into a store to conceal stolen items is not included under the statute, under the definition advocated by the majority opinion. “Outfit,” under the majority opinion’s interpretation of this term, sim *420 ply becomes the plural of “tool” and “implement,” effectively deleting “outfit” from Code § 18.2-94.[8] Therefore, I cannot agree with the majority opinion’s definition of “outfit” as it simply renders the term superfluous. As this Court stated in Williams v. Commonwealth, 50 Va.App. 337, 344 n. 4, 649 S.E.2d 717, 720 n. 4 (2007), “[T]o the extent that the terms [in Code § 18.2-94] may be interchangeable, we can only conclude that the General Assembly did not view the terms as such, but rather, found the differences to be of importance.” The majority opinion’s definition eviscerates the important differences between these three terms.
In support of its definition, the majority opinion expresses concern that the every day definition of “outfit” would allow every instance of hiding stolen merchandise in a pocket to fall under Code § 18.2-94. I find this position unpersuasive and, thus, disagree with the majority opinion’s analysis on this point.
First, I believe this concern is more appropriate to an argument in the policy context involving the appropriate lan *421 guage to use in a statute, as opposed to a legal analysis in an appellate opinion addressing the actual language used in a statute. An appellate court examines the language of a statute to determine what behavior the General Assembly intended to criminalize; it is not the role of the courts to evaluate the wisdom of the language codified by the legislature. Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). Under the explicit language in Code § 18.2-94, only people possessing the criminal intent to commit burglary, larceny, or robbery can be convicted, since the legislature in its drafting of this statute placed that specific limitation on prosecutions under this statute. If the General Assembly had intended to restrict convictions under Code § 18.2-94, then that body could have deleted the word(s) “tool” or “implement” or “outfit.” The General Assembly also could have included only the intention to commit “burglary” and left out the intention to commit “larceny” and “robbery.” However, the General Assembly did not enact either of these versions of the statute. Thus, this Court must address the language actually used in the statute, which includes the term “outfit.”
Second, although a panel of this Court noted in Williams, 50 Va.App. at 346, 649 S.E.2d at 721, that “Had the General Assembly intended such a result, they would have punished the crime of concealment accordingly,” I do not believe that affirming this conviction here would result by any means in the punishment of every concealment. As noted in the panel dissent in this case, Edwards v. Commonwealth, 52 Va.App. 70, 78, 661 S.E.2d 488, 492-93 (2008), appellant here prepared the purse by emptying it of its contents, with the admitted purpose of using the now-empty purse to conceal stolen property and help her take that property out of the store. She had no other purpose for carrying the purse. To her, it existed solely as a means to commit larceny. When asked at trial why she had carried the empty purse into the store, appellant plainly admitted that she had the purse because she “wanted to go to the store and steal.” The evidence did not provide any other reason for her possession of the purse nor did the evidence even hint that the purse had any other use besides assisting appellant with her attempted larceny.
*422 To me, this fact differentiates appellant’s situation from a shoplifter who places a stolen item in a purse that is otherwise being used normally. The pocketbook in such a situation would not fall under the proscription in Code § 18.2-94 because the thief possessed it primarily for an innocent purpose. Here, in contrast, appellant went to some trouble before entering the store, planning this part of her outfit so that it served her criminal purpose rather than any innocent one. She had no innocent reason for possessing the purse when she entered that store—instead, she had it with her as “special equipment” to aid her in her larceny. Therefore, I do not believe we, as an appellate court, should second-guess both the trial court’s finding and appellant’s own characterization of the item as specifically intended, and only intended, so that she could “go to the store and steal.” Carter, 223 Va. at 532, 290 S.E.2d at 867 (“[T]he verdict of the trial court will not be disturbed unless it appears to be plainly wrong or without evidence to support it.”). Based on the foregoing analysis, I would find that the evidence was sufficient to convict Edwards under Code § 18.2-94, and I would affirm her conviction. Consequently, I must respectfully dissent from the majority opinion.

. Although Code § 18.2-94 is titled "Possession of Burglarious Tools, Etc.,” that title does not add an additional element to the crime or dictate the actual elements of the crime proscribed by that statute. See Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976) ("[T]he summary title is not part, and does not determine the meaning, of the body of a statute.”); Brown v. Commonwealth, 215 Va. 143, 146, 207 S.E.2d 833, 836 (1974) ("[U]se of the word ‘jurisdiction’ in the summary title is not controlling. The summary title is not part of the body of the statute____”). At most, "burglarious tools” provides a shorthand phrase for the behavior criminalized in Code § 18.2-94.

. Contrary to the view expressed in the majority opinion, I believe Mercer was properly decided. The holding in Mercer is consistent with the plain language of the statute, allowing a conviction under Code § 18.2-94 if the person possesses an "outfit” intending to use it to commit "larceny,” one of the nine classes of objects proscribed under that statute. In addition, it is interesting to note that the appellate history of Mercer includes the denial of Mercer’s petition for review by the Supreme Court of Virginia. Mercer v. Commonwealth, Rec. No. 990848 (Va. Aug. 2, 1999).

. The majority opinion suggests in a footnote that "outfit” still has meaning because a collection of innocent items becomes an "outfit,” citing Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482 (1953), as an example. However, each of the items in the collection listed in Burnette would become a burglarious tool based on the suspect’s intended use of the item, rendering the term "outfit” unnecessary even in this context. Cf. Carter v. Commonwealth, 223 Va. 528, 290 S.E.2d 865 (1982) (affirming conviction for possession of a burglarious tool where the defendant possessed an unaltered screwdriver). And, it should be noted, the Burnette opinion did not address burglarious outfits; instead, it addressed "burglarious tools,” since the Commonwealth argued only that the items possessed by Burnette were tools used to commit burglary. Id. at 791-93, 75 S.E.2d at 486-87 (emphasis added). The Commonwealth did not argue that Burnette possessed a burglarious outfit or implement, so the opinion did not address the meaning of those terms. Thus, the Court in Burnette affirmed a conviction for possession of a set of tools without recourse to the term "outfit.” Thus, contrary to the majority opinion’s suggestion, Burnette actually proves, if the majority opinion’s definition of "outfit” is correct, that the term "outfit” is essentially meaningless as the term "tool” subsumes the term "outfit.” In other words, even if the statute did not include the word “outfit,” Burnette's conviction would have been affirmed as he possessed burglarious tools.