UPON REHEARING EN BANC
ROBERT J. HUMPHREYS, Judge.
This matter comes before the Court on a rehearing en banc following a divided panel opinion of this Court. Shakil Edwards (Edwards) appeals her conviction for possession of a tool, implement or outfit with the intent to commit larceny, in violation of Code § 18.2-94. Edwards contends that the evidence was insufficient as a matter of law to prove that the purse she carried at the time she committed the larceny was a tool, implement or outfit within the meaning of Code § 18.2-94. For the following reasons, we agree and reverse her conviction.
*404 I. BACKGROUND
“Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party in the circuit court.” Porter v. Commonwealth, 276 Va. 203, 215-16, 661 S.E.2d 415, 419 (2008). However, the facts of this case are not in dispute.
On June 23, 2006, Edwards entered a department store in Chesterfield County with three other women. Each woman carried a purse that “appeared to be concave” and not “full like a typical woman’s purse looks.” A department store security guard observed the women taking clothing from the children’s and juniors’ sections of the store and carrying it into the fitting room area. When the women exited the fitting rooms, their purses appeared “larger in size.” After the women left, the security guard entered the fitting rooms, found empty hangers on the floor, and discovered that merchandise was missing from the children’s and juniors’ sections.
The security guard stopped Edwards and the other women after they left the store. The security guard found four items of children’s clothing inside Edwards’ purse. The three other women also had stolen merchandise in their purses. Other than the stolen merchandise, three of the women’s purses, including Edwards’ purse, were completely empty. The fourth woman had a pair of slippers in her purse. Edwards admitted that they entered the store to steal merchandise and that she had stolen the clothing found in her purse. She was arrested and subsequently charged with grand larceny and possession of a tool, implement or outfit with the intent to commit larceny.
At the conclusion of the Commonwealth’s case-in-chief, Edwards moved to strike the Commonwealth’s evidence, arguing that her purse was not a tool, implement or outfit. The trial court denied the motion. Edwards testified in her own defense and admitted to stealing the clothing. Edwards also explained why she carried an empty purse into the store. The trial court asked Edwards, “Why were you carrying an empty *405 purse around?” Edwards answered, “Oh, ‘cause I wanted to go to the store and steal.” “And steal?” responded the judge. Edwards replied, “Yes.”
At the close of her case, Edwards again moved to strike the Commonwealth’s evidence on the grounds that her purse was not a “tool, implement or outfit” as contemplated by Code § 18.2-94. The court denied her motion, finding that the purse “was used to steal, and ... it fits within the definition of burglary tools.” The trial court subsequently convicted Edwards of petit larceny[1] and possession of burglarious tools. Edwards appealed her conviction for possession of burglarious tools to this Court.
On May 27, 2008, a divided three-judge panel of this Court reversed Edwards’ conviction. The majority held that Edwards’ purse is not a tool, implement or outfit within the meaning of Code § 18.2-94. The dissent reasoned then, as it does today, that Edwards, by emptying the purse of all its contents, “clearly used the purse for a purpose other than its ordinary, lawful one, thereby causing it to become something other than an ordinary purse.” Edwards v. Commonwealth, 52 Va.App. 70, 79, 661 S.E.2d 488, 493 (2008) (Beales, J., dissenting). The dissent concluded that Edwards’ purse was an “outfit” within the meaning of the statute.
The Commonwealth petitioned the full Court for rehearing en banc. On July 1, 2008, we granted the Commonwealth’s petition and stayed the mandate of the panel opinion.
II. ANALYSIS
On appeal, Edwards reiterates her argument that her purse is not a tool, implement or outfit. She claims that this is so because her purse “can in no way be considered innately burglarious in character.” The Commonwealth argues that tools, implements and outfits need not be “innately burglari *406 ous” to fall within the scope of Code § 18.2-94 and that Edwards’ purse is an “outfit,” within the meaning of the statute. We agree with the Commonwealth that Code § 18.2-94 does not apply only to burglarious tools, implements and outfits. However, we disagree with the Commonwealth’s characterization of the purse as an “outfit.” Thus, for the following reasons, we hold that Edwards’ possession of the purse is not punishable under Code § 18.2-94.
First, contrary to Edwards’ argument, Code § 18.2-94 does not apply only to “innately burglarious” items. Code § 18.2-94 states:
If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.
Under a cursory reading of the statute, there appears to be a disconnect between the first and second sentences. The first sentence criminalizes the possession of “any tools, implements or outfit[s]” with the intent to commit one of the listed crimes. Id. (emphasis added). However, the second sentence, apparently referring to the first sentence, states “such burglarious tools, implements or outfit[s]____” Id. (emphasis added). One might read the word “such burglarious tools ...” in the second sentence as modifying the first or at least indicating that the General Assembly only intended to punish the possession of burglarious tools, implements and outfits.
However, in Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482 (1958), the Supreme Court explained that the use of the word “such” was simply surplusage. The Court noted that the original version of Code § 18.2-94, enacted in 1887, stated:
“If any person ha[v]e in his possession any tools, implements, or other outfit known as burglars’ tools, implements, or outfit, with intent to commit burglary, robbery, or larce *407 ny, he shall be deemed guilty of a felony, and on conviction thereof, shall be punished by confinement in the penitentiary not less than five nor more than ten years. The possession of such burglarious tools, implements, or outfit, shall be prima facie evidence of an intent to commit burglary, robbery, or larceny.”
Id. at 787-88, 75 S.E.2d at 484 (quoting Code of 1919, sec 4437) (emphasis added). In 1919, the General Assembly amended the statute, removing the phrase “known as burglars’ tools, implements, or outfit” from the first sentence.[2] The Supreme Court explained the effect of that amendment on the rest of the statute, particularly the word “such”: “The word ‘such,’ as originally used was descriptive and relative, and its antecedent was ‘known as burglars’ tools, implements, or outfit.’ Elimination of this antecedent left the word meaningless; and the Revisors’ failure to eliminate it also was obviously inadvertent.” Id. at 788, 75 S.E.2d at 484 (emphasis added).
If, as Edwards argues, the word “burglarious” still modifies the words “tools, implements or outfit” in the first sentence, *408 “such” would then clearly not be meaningless. Essentially, Edwards contends that the statute should be read as follows:
If any person have in his possession any [burglarious] tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.
Clearly, inserting “burglarious” into the first sentence gives meaning to “such” in the second sentence. Contrary to the holding in Burnette, Edwards’ interpretation makes “such” “descriptive and relative” as it would clearly refer to the burglarious tools, implements and outfits mentioned in the first sentence. “Such” is only meaningless if the tools, implements and outfit in the first sentence are something broader, or at least different, from the burglarious tools, implements and outfit in the second sentence.
Reading the first sentence as applying to all tools, implements or outfits and the second sentence as applying only to burglarious tools, implements and outfits relieves any tension between the two sentences. Burnette implied as much when it explained the basis for distinguishing between ordinary tools and burglarious tools. The Court stated:
[T]ooIs or implements may be, and usually are, designed and manufactured for lawful purposes. But it is unusual for a person, on a lawful mission, to have in his possession a combination of tools and implements suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building, or to a vault or safe. All the statute does is to create a presumption of a criminal intent from proof of possession of burglarious tools or implements.
Id. at 790, 75 S.E.2d at 486 (emphasis added). Viewing burglarious tools as a subset of the larger categories of tools in the first sentence, the presumption of criminal intent in the second sentence makes sense. Code § 18.2-94 criminalizes the possession of any tool, implement or outfit with the *409 requisite intent. The second sentence merely recognizes that the burglarious nature of certain tools makes it so unusual for a person to lawfully possess them, that mere possession of the tools is indicative of a criminal intent.
Construing the statute in this way is consistent with prior precedent. In Moss v. Commonwealth, 29 Va.App. 1, 5, 509 S.E.2d 510, 512 (1999), we explained “Code § 18.2-94 requires proof that the offending tools, implements or outfit were intrinsically ‘burglarious’ only when the Commonwealth relies upon the statutory presumption to establish the requisite criminal intent.” We held that the Commonwealth may convict someone of possessing non-burglarious tools with the requisite criminal intent. However, it must do so “without benefit of the statutory presumption.” Id. at 3, 509 S.E.2d at 511. Thus, we reject Edwards’ argument that the evidence was insufficient merely because her purse was not burglarious. However, that conclusion does not end our analysis.
In order to convict Edwards under Code § 18.2-94, the Commonwealth was required to prove that Edwards’ purse was either a tool, implement or outfit. “The terms ‘tools,’ ‘implements,’ and ‘outfit’ are not defined statutorily.” Williams v. Commonwealth, 50 Va.App. 337, 342, 649 S.E.2d 717, 719 (2007). However, we have defined each of these terms in previous cases.
In Williams, we recognized that “[cjlearly, the terms ‘tool,’ ‘implement’ and ‘outfit’ have somewhat different but overlapping meanings.” Id. at 343, 649 S.E.2d at 720. Consistent with that principle, we explained that a “tool” is “an instrument (as a hammer or saw) used or worked by hand,” or “an implement or object used in performing an operation or carrying on work of any kind.” Id. We went on to define “implements” as “items associated with devices, instruments, equipment or machinery as they relate to an occupation or profession.” Id. at 345, 649 S.E.2d at 721. In doing so, we explained that giving a broader interpretation to “tools” and “implements”
*410 would lead to “absurd results.” See Washington [v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006)]. For example, one obvious result ... would be that every concealment of merchandise in violation of Code § 18.2-103, regardless of the item’s value, would also constitute a Class 5 felony under Code § 18.2-94 because any and every item used to accomplish the element of concealment from public view, such as a purse, coat or a pocket, would also constitute a “larcenous implement.” Had the General Assembly intended such a result, they would have punished the crime of concealment accordingly.
Id. at 342, 649 S.E.2d at 719.
Clearly, an ordinary purse is neither a “tool” nor an “implement” as we defined those terms in Williams. However, it remains for us to determine whether a purse constitutes an “outfit” as contemplated by Code § 18.2-94. In doing so, we conclude that our holding that a broad definition of tools, implements and outfits would lead to absurd results is inconsistent with our earlier definition of “outfit.” In Mercer v. Commonwealth, 29 Va.App. 380, 384, 512 S.E.2d 173, 175 (1999), we referred to “commonly accepted definitions” to define “outfit.” Those definitions are “(1) the act or process of fitting out or equipping, (2) materials, tools, or implements comprising the equipment necessary for carrying out a particular project, and (3) wearing apparel designed to be worn on a special occasion or in a particular situation.” Id. Of those definitions, we focused on the third one in particular.
Under Mercer’s definition of outfit, the possession of any “wearing apparel” that a thief chose to wear for the “particular” purpose of committing burglary, robbery or larceny would be punishable under Code § 18.2-94. That broad definition of outfit would lead precisely to the “absurd results” we warned of in Williams—the conclusion that any and every item of apparel used to accomplish the element of concealment from public view, such as a coat or a pocket, would also constitute a “larcenous outfit.” As we explained in Williams, the General Assembly could not have intended that result.
*411 The broad definition used in Mercer is also inconsistent with the traditional rule of statutory construction known as noscitur a sociis. Noscitur a sociis is the principle that “a word is known by the company it keeps.” S.D. Warren Co. v. Maine Bd. of Envtl. Prot., 547 U.S. 370, 378, 126 S.Ct. 1843, 1849, 164 L.Ed.2d 625 (2006). It “provides that the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context.” Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). To define “outfit” as wearing apparel would be to distinguish it from “the company it keeps.” S.D. Warren Co., 547 U.S. at 378, 126 S.Ct. at 1849. Rather than defining “outfit” broadly as “wearing apparel,”[3] we conclude today that the other definitions referenced in Mercer are more consistent with our previous definitions of “tools” and “implements.” Indeed, as is implicit in the first definition noted in Mercer, the etymology of the term “outfit” is from the phrase “fit out” or equip, such as to outfit a ship for a voyage. See The Century Dictionary, An Encyclopedic Lexicon of the English Language 4183 (1914). In light of the definitions of the words “tools” and “implements” immediately preceding “outfit”—terms with which “outfit” has an “overlapping meaning[ ],” Williams, 50 Va.App. at 343, 649 S.E.2d at 720,—we overrule Mercer to the extent that it defines “outfit” as “wearing apparel”[4] and hold that, in the context of Code § 18.2-94, the appropriate definition of “outfit” is “the articles forming an equipment” or “the tools or instruments comprised in any special equipment; as a carpenter’s or a *412 surgeon’s outfit.” Webster’s New International Dictionary of the English Language, Second Edition 1733 (1948).[5]
Under that definition, we hold that an ordinary purse is not “special equipment” for the purpose of shoplifting. The fact that Edwards deliberately emptied the purse in order to facilitate a theft does not change that fact. Emptying the purse to conceal stolen items does not convert the purse into a shoplifter’s “outfit” anymore than slipping a hammer into one’s belt would convert the belt into a tool belt and thus make it part of a carpenter’s “outfit.” Thus, in the case before us, Edwards’ purse does not constitute a larcenous “outfit” within the meaning of Code § 18.2-94.
III. CONCLUSION
For these reasons, we hold that the trial court erred in holding that the evidence was sufficient as a matter of law to prove that Edwards violated Code § 18.2-94. Therefore, we reverse her conviction and dismiss the indictment for that offense.

Reversed and dismissed.

. At trial, the Commonwealth failed to prove that the clothing Edwards stole was worth over $200. Thus, the court only convicted her of petit larceny rather than grand larceny. See Code § 18.2-95.

. As codified in 1919, the statute in its entirety read as follows:
If any person break and enter the dwelling-house of another in the night time with the intent to commit a felony or larceny therein, he shall be deemed guilty of burglary, though the thing stolen or intended to be stolen, be of less value than fifty dollars. If any person be guilty of burglary, he shall be punished with death, or in the discretion of the jury, by confinement in the penitentiary for not less than five nor more than eighteen years. If any person have in their possession any tools, implements or outfit, with the intent to commit burglary, robbery, or larceny, he shall be deemed guilty of a felony, and be punished by confinement in the penitentiary not less than five nor more than eighteen years. The possession of such burglarious tools, implements, or outfit by other than a licensed dealer shall be prima facie evidence of an intent to commit burglary, robbery or larceny.
Code of 1919, Sec. 4437. The Revisors’ note referred to in Burnette immediately follows the above paragraph and reads in full as follows: "The phraseology of this section has been changed so as to include common law burglary under the statute, and there is a transposition of sentences at the beginning of the section, but no material change has been intended.” Id.

. "Wearing apparel” is itself a broad term and in the context of clothing, "outfit,” customarily refers to a "set of garments” rather than a single item or accessory e.g. a new Easter outfit and would not, in any event, include a purse which is carried rather than worn. See Oxford’s English Dictionary 1015 (1989).

. Although we overrule Mercer’s definition of outfit, we do not pass judgment on whether the pants worn by the appellant in Mercer fall within the scope of the statute. Furthermore, contrary to the dissent’s assertion, we do not hold that clothing can never be considered a tool, implement or outfit within the meaning of the statute.

. This definition is also consistent with an aggregation of otherwise innocent items, assembled specifically for one of the criminal purposes prohibited by the statute such as those inventoried by the Supreme Court in Burnette:
“a loaded 32-caliber Colt’s blue steel revolver, two new 10 inch hacksaw blades in a brown paper bag, ... one pair of white cotton gloves; ... one 36 inch pick, one 30 inch wrecking bar; one 3 pound sledge hammer; one 18 inch screw driver; one two-cell flashlight, one inch steel drill bit, and one 7/16 inch steel drill bit; ... four inch steel drill bits; and ... one pair of work gloves----”
Burnette, 194 Va. at 791, 75 S.E.2d at 486.